UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY TOLBERT,

         Plaintiff,

v.

JOHN POTTER, POSTMASTER
GENERAL,

         Defendant.

_____/

Case No. 03-74592

Honorable Nancy G. Edmunds

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [16]**

This employment discrimination matter comes before the Court on Defendant's motion

for summary judgment.  Plaintiff's amended complaint alleges that Defendant (1) retaliated

against her in violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.* (Count I), (2) discriminated

against her on the basis of her gender, race and age in violation of Title VII (Count II), and

(3) violated the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.* (Count

III).  (Am. Compl.)  For the reasons stated below, Defendant's motion is GRANTED.

**I.    Facts**

Plaintiff was employed by the United States Postal Service as a letter carrier in Detroit,

Michigan for over 30 years.  (Am. Compl. at ¶ 3.)  In March 1999, at the age of 51, Plaintiff

applied for, and was granted, disability retirement.  (Def.'s Ex. A, Tolbert Dep. at 56.)  She

applied for disability retirement because she was diagnosed with anxiety, acute depression,

and deterioration of her spinal cord. (*Id.*) The Office of Personnel Management approved her disability retirement in July 1999. (*Id.*)

Plaintiff alleges that, while working out of the Fenkell Station, she was discriminated against on the basis of her gender, race, and age. She further alleges that she was retaliated against and harassed for her EEO involvement and protected EEO activity. (Am. Compl. at ¶ 12, 13a-13f.)

In September 1997, Plaintiff filed two formal administrative complaints with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Ex. B, 8/30/01 Final Agency Decision at 8.) Both were dismissed. (Am. Compl. at ¶¶ 14, 16.)

In September 1998, Plaintiff filed the administrative EEOC complaints that give rise to this action. Plaintiff's EEOC complaints were later consolidated into EEOC Case Nos. 4-J-481-0094-98 and 4-J-481-0140-98. (*Id.* at 1.) The consolidated administrative cases addressed the following claims:

(1) Management at the Fenkell Post Office discriminated against Plaintiff because of her race, gender, and age and also retaliated against her because of her prior EEO activity when her supervisor, Yolanda Hailey (a Black female, age 38), issued a NTOL-1 discipline ("No Time Off Letter of Warning") on February 25, 1998 for Plaintiff's failure to follow instructions to call the station between 3 and 3:30 p.m. when she was unable to complete her route within the allotted time;

(2) Plaintiff was discriminated against because of her gender when her supervisor Christine Ross (a Black female, age 56) denied her light duty in late 1997/early 1998 despite the fact that she had medical documentation (dated 12/23/97 and 3/3/98) indicating that she could have returned to work on November 10, 1997, with restrictions of not lifting above 30 pounds, no standing, and no walking with mail bag for 3 hours for one month, and could have resumed normal duties on January 12, 1998;

2

(3)  Plaintiff was harassed on April 15, 1998 during a Food Drive;[1]

(4)  Plaintiff was discriminated against because of her race, gender, and age
when a Supervisor, Christopher Oxie (a White male in his early 30s),
scheduled her for a Fitness for Duty Exam on April 15, 1998; and

(5)  On July 6, 1998, Plaintiff was discriminated against because of her race,
gender, and age and was retaliated against because of her protected
EEO activity when a supervisor, Christopher Oxie, cursed at her, kicked
his chair out from underneath himself, pulled a book down from a shelf,
made an unspecified derogatory statement, and stood over her in a
manner that she found intimidating when she approached him in her role
as a union steward to sign joint grievance forms.

(*Id.* at 1, 4-9; Def.'s Exs. C and D, Affs. of C. Ross and Y. Hailey.)

On August 27, 2001, a Final Agency Decision was issued in Plaintiff's EEO Case Nos.

4-J-481-0094-98 and 4-J-481-0140-98, finding no discrimination based on race, gender,

age, or retaliation.  (Final Agency Decision at 9.)  Specifically, the Final Agency Decision

determined that:

(1)  As to the February 25,1998 discipline letter, the record evidence revealed
that six employees (including Plaintiff) were issued NTOL-1 discipline letters at
the Fenkell Post Office; all were Black, five were female, and three were over 40
years of age.  Moreover, Plaintiff had grieved the matter through the grievance
arbitration process, a settlement decision was reached on August 28, 1998,
indicating that the NTOL-1 discipline would be expunged on November 25, 1998
provided no similar discipline was issued.  (*Id.* at 4.)

(2)  As to the denial of light duty, there was no record evidence that Plaintiff had
made a written request to the Fenkell Post Office for light duty following her
September 12, 1997 surgery despite her knowledge that a written request is
required, that the medical documentation Plaintiff provided dated December 23,
1997 stated that she could return to work on November 10, 1997 with
restrictions, that the medical documentation Plaintiff provided dated March 8,
1998 stated that she could return to work without restrictions on January 12,
1998, that there was no record evidence that management at the Fenkell Post
Office received either the December 1997 or March 8, 1998 medical
documentation, that Plaintiff's affidavit supporting her EEOC complaint failed to

[1]These claims are not at issue in this lawsuit.

3

indicate how she notified management of her light duty request or whom she notified, that her co-worker Lewis Mills did submit a timely written request for light duty on March 9, 1998 that allowed him to perform the core functions of his duties, and that five employees were denied light duty because of non-job-related injuries; three were female and two were male.  (*Id.* at 5.)

(3)  As to allegations that Plaintiff was harassed during an April 15, 1998 Food Drive, there was no evidence that a similarly situated employee was treated more favorably under similar circumstances.  (*Id.* at 6.)

(4)  As to the May 19, 1998 fitness for duty exam, the record evidence revealed that Plaintiff's supervisor scheduled her for a fitness for duty exam because Plaintiff was consistently having problems with her route and the exam was a tool used to determine whether an employee has a medical reason that interferes with the employee's ability to perform her duties, that Plaintiff and five other employees were scheduled for such exams; all were Black, three were female (including Plaintiff), and four were over 40 years of age.  (*Id.* at 7.)

(5)  As to the July 6, 1998 claim that Plaintiff's supervisor Christopher Oxie harassed and cursed at her, the Plaintiff failed to state what words Mr. Oxie used when he allegedly cursed at her and what derogatory remark he allegedly used while on the telephone, Plaintiff had no corroborating witnesses, Plaintiff failed to prove the incident occurred as she alleged, and she failed to name a similarly situated employee who was treated more favorably under similar circumstances. (*Id.* at 8.)

(6)  As to Plaintiff's retaliation claims, it was found that Plaintiff failed to establish a causal connection between her prior EEO activity in 1997 and her consolidated complaints filed in September 1998.  (*Id.* at 9.)

On August 19, 2003, Plaintiff received the Denial of Request for Reconsideration concerning her 1998 EEO cases.  (Am. Compl. at ¶ 17.)

On November 14, 2003, Plaintiff filed this action.

## II.    Standard of Review

### A.  Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement

4

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### B.  Burden-Shifting Approach Applied to Title VII Discrimination Claims

Plaintiff has the burden of proof on her discrimination and retaliation claims under Title VII.  She must present either (1) direct evidence of gender, race or age discrimination and retaliation because of her protected activity, or (2) circumstantial evidence that creates an inference of unlawful gender, race, or age discrimination and retaliation for engaging in protected activity.  "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's

5

actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Plaintiff does not present any direct evidence in support of her discrimination and retaliation claims under Title VII. Accordingly, her claims are governed by the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 405 U.S. 248 (1981).

Under the *McDonnell Douglas* approach, a plaintiff must first make out a *prima facie* case. If the plaintiff establishes a *prima facie* case of discrimination or retaliation, the defendant can rebut the presumption of unlawful discrimination or retaliation by "articulat[ing] some legitimate, nondiscriminatory reason" for the adverse employment action. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). "This burden is one of production, not persuasion; it can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 209 (1993) (internal quotes and citation omitted).

If the defendant meets this burden, then the plaintiff must come forward with evidence showing that the defendant's proffered reason is a mere pretext for unlawful discrimination. *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). The plaintiff can establish pretext by showing that the defendant's proffered legitimate, nondiscriminatory reason: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

III. **Analysis**

Defendant's motion to dismiss argues that: (1) Plaintiff may only litigate issues raised and exhausted at the administrative level; (2) Plaintiff's claims alleging a violation of the

6

Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.* (Am. Compl. at Count III) must be dismissed because Plaintiff did not exhaust her administrative remedies; and (3) Plaintiff's remaining claims of discrimination and retaliation in violation of Title VII must be dismissed because Plaintiff either cannot make out a prima facie case of unlawful discrimination or retaliation or she cannot establish pretext.  This Court agrees.

### A.  Failure to Exhaust Administrative Remedies

It is well-established that a plaintiff who claims employment discrimination by her employer may not seek relief in federal court unless it can be shown that all administrative remedies have first been exhausted.  *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 832 (1976); *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992).  Accordingly, Plaintiff cannot pursue claims in this action unless those claims were raised and exhausted in Plaintiff's EEO administrative complaints, or "reasonably expected to grow out of the charge of discrimination" raised and exhausted in those EEO complaints.  *Haithcock*, 958 F.2d at 675.  Thus, as Plaintiff concedes, the claims asserted in Count III of her amended complaint alleging a violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et seq.,* are properly dismissed because she failed to exhaust her administrative remedies.  (Pl.'s Resp. at 3, n.2.)  Likewise, all other claims Plaintiff failed to exhaust are dismissed.  These include Plaintiff's claims about forced overtime (Am. Compl. ¶ 13a; Pl.'s Resp. at 4) and alleged harassment by Christopher Oxie on June 23, 1998 (Pl.'s Resp. at 5).

### B.  Title VII Claims

Plaintiff alleges that Defendant discriminated against her because of her gender, race, and age and subjected her to retaliatory harassment because she filed complaints with the

7

EEOC. Although Plaintiff's discrimination and retaliation claims are both analyzed under the *McDonnell Douglas* approach, this Court will address them separately.

### 1. Discrimination Claims

Plaintiff claims that she was discriminated against by Defendant, her employer, because of her gender, race and age.  Specifically, Plaintiff's amended complaint alleges that Defendant violated Title VII by treating her differently than similarly situated employees outside her protected class:  (1) by refusing to place her on light duty, (2) by subjecting her to unfair and warranted formal and informal disciplinary actions; i.e., the February 25, 1998 No Time Off Letter ("NTOL") of warning, (3) by subjecting her to unnecessary fitness for duty exams in 1998, (4) by adversely impacting her ability to perform her job because of revisions to her job duties, (5)  by subjecting her to repeated unwarranted counting of her mail, (6) by unduly and covertly observing her on her route, and (7) by allowing a supervisor, Christopher Oxie, to berate and harass her on July 6, 1998, without taking any action against him.  (Am. Compl. at ¶¶ 13a-13f, 30.)

To establish a *prima facie* case of employment discrimination under Title VII, the plaintiff must show that (1) she is a member of a protected  class, (2) she was subject to an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated differently than similarly situated employees outside her protected class. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004).  Defendant first argues that Plaintiff cannot succeed on her Title VII discrimination claims because she cannot establish that she suffered an adverse employment action with regard to the July 6, 1998 incident with Christopher Oxie.  As to her remaining discrimination claims, Defendant next argues that, even if it is assumed that Plaintiff can make out a *prima facie* case on each of these

8

discrimination claims, she has failed to present any evidence showing that Defendant's proffered legitimate, non-discriminatory reasons for each challenged action is a pretext for gender, race, or age discrimination.  This Court agrees.

**(a) Adverse Employment Action**

Proof of an adverse employment action is an essential element of Plaintiff's Title VII discrimination claims.  As the Sixth Circuit recently explained, "[n]ot every act affecting an individual's employment can be considered an adverse employment action."  *McMillian v. Potter*, No. 04-1607, 2005 WL 1140629, *3 (6th Cir. May 11, 2005) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  "A *de minimis* employment decision is not sufficient to support a Title VII claim.  Likewise, simply because an employee is made unhappy by an action does not mean that he has identified an adverse employment action.  Rather, an adverse employment action must work a materially adverse change in terms and conditions of [plaintiff's] employment.  In contrast, reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims.  Such reassignments may be considered adverse employment actions, however, if they function as a demotion, evidenced by a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Id.* (internal quotes and citations omitted).

Plaintiff alleges that on July 6, 1998, Christopher Oxie, a White male supervisor in his early 30s, acted in a manner that she found rude and intimidating when she approached him, as a union steward, to have several grievance forms signed.  No disciplinary action affecting Plaintiff's employment was taken as a result of that July 6, 1998 encounter.  Accordingly, it fails to satisfy the definition of an adverse employment action, and Plaintiff

9

cannot establish one of the essential elements of her *prima facie* case of intentional discrimination under Title VII.  As observed by the Sixth Circuit, humiliation or a "bruised ego" are insufficient to constitute an adverse employment action.  *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886-87 (6th Cir. 1996).

Plaintiff also alleges that she was discriminated against on February 25, 1998, when Defendant issued her a No-Time-Off Letter ("NTOL") of discipline warning.  Similar to the postal employee in *McMillian*, Plaintiff here can identify no adverse employment action as a result of this February 25, 1998 letter.  *See McMillian v. Potter*, No. 04-1607, 2005 WL 1140629 (6th Cir. May 11, 2005).   As observed by the EEOC in its Final Decision, Plaintiff successfully grieved this matter and it was expunged from her personnel file on November 25, 1998.  (Def.'s Ex. B, Final Agency Decision at 4.)   Plaintiff does not present any evidence that any further disciplinary action was ever instituted against her or that she suffered any employment action that would fit the Sixth Circuit's definition of a materially adverse employment action.  Accordingly, she cannot establish this essential element of her *prima facie* case, and thus any discrimination claim arising from this February 25, 1998 letter is properly dismissed.

### (b) Legitimate, Non-Discriminatory Reasons and Pretext

Plaintiff's remaining claims of discrimination likewise fail.  Even if it is assumed (as Defendant does here) that Plaintiff can present evidence to establish the adverse employment action element of her *prima facie* discrimination case, she has not presented evidence rebutting Defendant's legitimate, non-discriminatory business reasons for each of the challenged actions by showing that the reasons are merely a pretext for intentional gender, race, or age discrimination.

10

"A plaintiff can refute the legitimate, nondiscriminatory reason articulated by an employer to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (quoting *Dews*, 231 F.3d at 1021). "Regardless of which option is used, the plaintiff retains the ultimate burden of producing sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against [her]." *Id.* (internal quotes and citation omitted).

Defendant proffers the following legitimate, non-discriminatory business reasons for (1) making revisions to Plaintiff's mail route, (2) scheduling Plaintiff for a fitness for duty exam in 1998, (3) counting her mail, and (4) observing her on her route. Christine Ross, a Black, 56 year old female, was the Manager of the Fenkell Station where Plaintiff was employed at the time her route was revised. In an Affidavit to the EEOC, she explains that, in July 1997, the Fenkell Station underwent major route adjustments. Plaintiff disagreed with the adjustments and failed to cooperate in Defendant's efforts to determine whether her route was overburdened. Ms. Ross explained that Plaintiff had a problem performing on her route and thus appropriate management measures were taken to determine why Plaintiff was unable to fulfill her job requirements. Some of the management tools used to determine the reason for an employee's poor performance include those Plaintiff complains about here; i.e., fitness exams to determine whether there is a medical reason for poor performance, counting mail, and street observation. Supervisors are required to use these tools to determine the reason for poor performance and to determine how an employee can improve his or her performance. The same or similar measures are used with any

11

employee experiencing difficulty with performing job duties.  (Def.'s Ex. C, Ross 4/15/99 Aff.)

Yolanda Hailey, a 38 year old Black female, was Plaintiff's direct supervisor during the relevant time period.  She also provided an affidavit to the EEOC in connection with Plaintiff's EEOC complaints.  (Def.'s Ex. C, Hailey 4/8/99 Aff.)  Ms. Hailey averred that supervisors always identify themselves while on street observation, that Plaintiff's mail was counted as a method of determining her office efficiency, that this is a tool used when needed with all carriers with similar problems, and that Plaintiff was scheduled for fitness for duty examinations in 1998 as another way to determine if there was a physical reason for her inability to complete her route assignment.  (*Id.*)

In response to Defendant's legitimate, non-discriminatory reasons for the above actions, Plaintiff presents only unsupported assumptions that Defendant's proffered business reasons were merely a pretext for intentional discrimination.  She fails to present admissible evidence raising a genuine issue that Defendant's reasons:  (1) have no basis in fact, (2) did not actually motivate Defendant's challenged conduct, or (3) were insufficient to warrant the challenged conduct.[2]  *See* Fed. R. Civ. P. 56(e).  Plaintiff has not presented evidence disputing that all Fenkell Station mail routes were similarly revised in 1997 or showing that other similarly situated mail carriers outside her protected class were treated more favorably in similar circumstances.  *See Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.)

---

[2]The inadmissible hearsay evidence presented in Plaintiff's Ex. 6 (9/15/98 letter by R. Stephen), Ex. 7 (8/25/99 letter by S. Burt), Ex. 9 (8/24/98 letter by R. Stephen), and Ex. 10 (unsworn 10/30/98 statement by A. Brown) is excluded pursuant to Fed. R. Civ. P. 56(e) and thus cannot be used to defeat Defendant's motion for summary judgment.

The Court now addresses Plaintiff's final claim -- that her Manager, Christine Ross, and Supervisor, Yolanda Hailey, discriminated against her because of her gender, race, and age when they denied Plaintiff's request to be placed on light duty in November 1997 while she was recovering from surgery performed in September 1997.  Plaintiff was off work following surgery from September 15, 1997 through January 12, 1998.  When Plaintiff learned in March 1998 that another employee, Louis (Lewis) Willis, a Black male, had his request for light duty approved, she filed an EEOC complaint alleging gender discrimination.  Plaintiff argues here, as she did there, that this disparate treatment is evidence that Defendant's denial of her request for light duty in November 1997 was because of her gender, race and/or age.

Defendant's articulated non-discriminatory business reason for denying Plaintiff's request that she be placed on light duty is that (1) Plaintiff's December 23, 1997 medical authorization had restrictions that prohibited her from performing the core functions of her position (Def.'s Ex. D, Y. Hailey 4/8/99 Aff.); and (2) Plaintiff did not submit a written request for light duty during her absence (Def.'s Ex. C, C. Ross 4/15/99 Aff.).

Plaintiff, in response, fails to present evidence showing there is a genuine issue that Defendant's challenged conduct was a mere pretext for unlawful discrimination.  Plaintiff presents no evidence that either her Manager, Christine Ross, or her direct Supervisor, Yolanda Hailey denied a written request submitted to them by Plaintiff during her absence in 1997.  Rather, as observed by the EEOC in its Final Agency Decision, Plaintiff's medical documentation consists of (1) a December 23, 1997 letter, indicating that she could have returned to work several weeks earlier on November 10, 1997 but with restrictions of no lifting above 30 pounds, no standing, and no walking with mail bag for 3 hours for one

13

month; and (2) a March 3, 1998 letter clearing Plaintiff for work several weeks earlier on January 12, 1998. (Def.'s Ex. B, Final Agency Decision at 5.) Plaintiff presents no evidence that management at the Fenkell Post Office received either medical authorization letter. In response to Plaintiff's allegation of disparate treatment, Defendant presents evidence that, after receiving a letter from Louis Willis' physician, placing him on a work tolerance program that allowed him to perform the core functions of his duties (Def.'s Ex. C, C. Ross 4/15/99 Aff.), and requesting that he be placed on light duty on March 9, 1998, that request was granted. This evidence refutes Plaintiff's claim that Willis, an allegedly similarly-situated employee in an unprotected class, was treated more favorably under similar circumstances.

In light of the above, Plaintiff's Title VII claims of gender, race, and age discrimination are dismissed. The Court now addresses Plaintiff's Title VII retaliation claims.

### C.  Retaliation Claims

Plaintiff claims that Defendant retaliated against her because she filed complaints with the Equal Employment Opportunity Commission ("EEOC"). Specifically, Plaintiff alleges that Defendant violated Title VII and unlawfully retaliated against her by: (1) refusing to place her on light duty; (2) subjecting her to unfair and warranted formal and informal disciplinary actions; i.e. the February 25, 1998 NTOL warning, (3) subjecting her to unnecessary fitness for duty exams in 1998, (4) unfairly revising and increasing her mail delivery route, (5) repeatedly, and without cause, counting her mail and unduly and covertly observing her on her route, and (6) allowing a supervisor, Christopher Oxie, to berate and harass her on July 6, 1998, without taking any action against him. (Am. Compl. at ¶¶ 13a-13f, 22.)

14

Pursuant to § 704(a) of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation under Title VII, the plaintiff  must show that:

> (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, *or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor*; and (4) there was a causal connection between the protected activity and the adverse employment action *or harassment*.

*Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis in original).

It is not disputed that filing a complaint with the EEOC is protected behavior and that Defendant was aware of Plaintiff's protected activity.  As to the third element, Plaintiff alleges that Defendant retaliated against her by subjecting her to the above harassing behavior by Manager Christine Ross, Supervisor Yolanda Hailey, and Supervisor Christopher Oxie.  Specifically, Plaintiff complains that her route was revised, that her mail was constantly counted, that she had to undergo numerous fitness for duty exams, she was constantly watched on the route, and that on one occasion, July 6, 1998, a supervisor, Christopher Oxie, made rude, derogatory and comments to her in a manner she found intimidating (Am. Compl. ¶ 13f).

Plaintiff is required to show that the challenged harassing conduct is "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To do this,

Plaintiff must show that Defendant created an environment that is both subjectively <u>and</u> objectively unreasonable. *Id.* at 21-22.  In determining whether the alleged harassment is sufficiently severe or pervasive, the Court considers the totality of the circumstances of Plaintiff's employment, including "the frequency of the . . . [allegedly harassing] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.  Considering the above, this Court concludes that Plaintiff has not presented evidence allowing a reasonable jury to conclude that the challenged conduct constitutes severe or pervasive retaliatory harassment as required for Plaintiff's *prima facie* case of Title VII retaliation.  *See Harris*, 510 U.S. at 23.  *See also Morris*, 201 F.3d at 792.  Thus, Plaintiff's retaliatory harassment claim cannot stand.

Plaintiff's additional retaliation claims that Defendant's discrete acts of (1) denying her light duty request, (2) issuing the February 1998 NTOL warning, (3) requiring her to take a fitness for duty exam in Spring of 1998, and (4) Christopher Oxie's "rude, derogatory, and intimidating comments" to Plaintiff on July 6, 1998, likewise fail for all the reasons stated in the above section addressing these discrete acts as alleged discrimination on the basis of Plaintiff's gender, race, and age.

**IV.  Conclusion**

For the above stated reasons, Defendant's motion for summary judgment is GRANTED.

16

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  June 2, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 2, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager